NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

JUL 14 2021

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 20-30084 |
| Plaintiff-Appellant, | D.C. Nos. 4:19-cr-06052-SMJ-1 4:19-cr-06052-SMJ |
| v. | |
| MANUEL ALEJANDRO SANCHEZ, | MEMORANDUM* |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the Eastern District of Washington
Salvador Mendoza, Jr., District Judge, Presiding

Argued and Submitted June 11, 2021
Seattle, Washington

Before: GOULD, CLIFTON, and MILLER, Circuit Judges.

The United States appeals from the district court's dismissal of an

indictment charging Manuel Sanchez with unlawful reentry, in violation of 8

U.S.C. § 1326. We have jurisdiction under 28 U.S.C. § 1291. Reviewing de novo,

*United States v. Gonzalez-Valencia*, 987 F.3d 1239, 1241 (9th Cir. 2021), we

reverse and remand.

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

1.     A defendant "may not challenge the validity" of a removal order underlying an unlawful reentry charge unless he demonstrates that (1) he "exhausted any administrative remedies that may have been available to seek relief against the order," (2) his removal proceedings "improperly deprived [him] of the opportunity for judicial review," and (3) "the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d); *see United States v. Palomar-Santiago*, 141 S. Ct. 1615, 1620 (2021). Sanchez waived his right to appeal his final order of removal to the Board of Immigration Appeals. Because he failed to exhaust his administrative remedies, *see Palomar-Santiago*, 141 S. Ct. at 1621, and consequently was not deprived of judicial review, Sanchez cannot now collaterally attack his removal order.

The district court excused Sanchez's compliance with section 1326(d)'s exhaustion and judicial review requirements on the theory that Sanchez's waiver of appeal was invalid because he "was not given a genuine opportunity to present evidence favoring his application" for voluntary departure. Because due process requires that a defendant have an opportunity to challenge the validity of a removal order "used to establish an element of a criminal offense," *United States v. Mendoza-Lopez*, 481 U.S. 828, 837–39 (1987), "we have generally held that where an alien is deprived of his right to appeal to the BIA," he "is excused from satisfying (d)(1) and satisfies (d)(2)," *United States v. Gonzalez-Villalobos*, 724

2

F.3d 1125, 1130 & n.7 (9th Cir. 2013).

The government argues that *Palomar-Santiago* abrogated that holding. We need not decide that issue because even assuming that the failure to exhaust can still be excused, the district court erred in excusing it here. The inability to present evidence favoring voluntary departure "is not an error that, by its nature, affected [Sanchez's] awareness of or ability to seek judicial review." *Gonzalez-Villalobos*, 724 F.3d at 1132. To the contrary, Sanchez was aware of his right to seek voluntary departure, applied for it, and could have appealed the denial of that relief. Any error committed by the immigration judge would "not excuse [Sanchez's] failure to comply with a mandatory exhaustion requirement" because "further administrative review, and then judicial review if necessary, could fix that very error." *Palomar-Santiago*, 141 S. Ct. at 1621.

The district court also erred in finding that the entry of Sanchez's final order of removal was "fundamentally unfair." An order is fundamentally unfair if the defendant's due process rights were violated at his removal proceeding and he suffered prejudice as a result. *United States v. Valdez-Novoa*, 780 F.3d 906, 913 (9th Cir. 2015). Even if the immigration judge violated Sanchez's due process rights by refusing to consider evidence favoring voluntary departure, Sanchez did not establish prejudice because it was not "plausible, rather than merely conceivable or possible," that an immigration judge would have granted him relief.

3

*Id.* at 914. Sanchez's equities most closely resemble those of the defendant in *Valdez-Novoa*, for whom voluntary departure was implausible. *Id.* at 921. On the positive side, both Sanchez and Valdez-Novoa arrived in the United States as children, and both attended school and worked in the United States. *Id.* at 917–18. While Sanchez has U.S. citizen children and a U.S. citizen fiancée, which Valdez-Novoa did not, Valdez-Novoa also had numerous U.S. citizen and lawful permanent resident family members in the United States, which Sanchez does not. *Id.* at 921. On the negative side, Sanchez was convicted of one more felony and one more misdemeanor than Valdez-Novoa, and the conduct underlying some of Sanchez's convictions "could have resulted in serious injury." *Id.* at 917, 920. Sanchez failed to comply with the terms of probation and parole at least eight times, and he missed court hearings at least 16 times, which would have "cautioned the IJ against granting voluntary departure." *Id.* at 920. Sanchez's offenses had also grown more frequent and serious over time. *See id.* at 917. Finally, one of Sanchez's convictions—unlawful possession of methamphetamine—constituted a non-waivable ground of inadmissibility, so a grant of voluntary departure would not have enabled him to lawfully reenter the country. *See* 8 U.S.C. § 1182(a)(2)(A)(i)(II).

2.　　The district court correctly rejected Sanchez's argument that the immigration judge lacked jurisdiction over his removal proceedings due to a

4

defective notice to appear. Sanchez conceded that jurisdiction vested under

*Karingithi v. Whitaker*, 913 F.3d 1158 (9th Cir. 2019), a decision that remains

binding circuit precedent. *See United States v. Bastide-Hernandez*, No. 19-30006

(9th Cir. July 12, 2021). The Supreme Court's recent decision in *Niz-Chavez v.

Garland*, 141 S. Ct. 1474 (2021), is not "clearly irreconcilable" with *Karingithi*.

*See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc). *Niz-Chavez*

concerns the requirements for a notice to appear to trigger the stop-time rule for

cancellation of removal, 141 S. Ct. at 1479; it has no bearing on jurisdiction. *See

Karingithi*, 913 F.3d at 1161.

**REVERSED and REMANDED.**